IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RANDALL WILLIAMS, *Personal Representative of the Estates of Shanice R. Dantzler-Williams and Miranda R. Dantzler-Williams*; and BETTY SIMMONS, *Personal Representative of the Estate of Stephanie Dantzler*; | )<br>)<br>)<br>)<br>)<br>) | |
| | ) | No. 2:23-cv-02149-DCN |
| Plaintiffs, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| EMILY PELLETIER; CLINTON SACKS; CHARLESTON COUNTY SHERIFF'S OFFICE; and CHARLESTON COUNTY, | )<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

The following matter is before the court on defendant Charleston County Sheriff's Office's ("CCSO") motion to dismiss. ECF No. 24. For the reasons set forth below, the court grants the motion.

**I.   BACKGROUND**

This case arises from a car accident which resulted in the deaths of Shanice R. Dantzler-Williams ("Shanice"), Miranda R. Dantzler-Williams ("Miranda"), and Stephanie Dantzler ("Stephanie") (together, the "decedents"). ECF No. 129, Amend. Compl. ¶¶ 79–86. Deputy Emily Pelletier ("Deputy Pelletier") and Deputy Clinton Sacks ("Deputy Sacks") were responding to a non-emergency stalled vehicle and, in so doing, greatly exceeded the speed limits, failed to abide by traffic laws, and failed to engage their respective emergency lights or audible sirens in violation of CCSO policy. Id. ¶¶ 38–86. Deputy Pelletier sped past a stop sign and crossed multiple lanes of traffic on

1

Highway 17, ultimately striking, at a speed of seventy-three miles-per-hour, the vehicle Shanice drove southbound. Id. ¶ 79. Shanice and Miranda were celebrating Mother's Day with their mother Stephanie. Id. ¶ 80. All three of them sustained catastrophic injuries because of the crash and died shortly thereafter. Id. ¶¶ 80–86. This incident is purportedly not a one-off but is rather part of a history of dangerous driving and misuse of county vehicles by CCSO deputies, which neither CCSO nor Charleston County (the "County") have adequately addressed. Id. ¶¶ 93–98.

Plaintiffs Randall Williams ("Williams") and Betty Simmons ("Simmons") (together, "plaintiffs") filed this action in the Charleston County Court of Common Pleas on May 15, 2023. ECF No. 1-1, Compl. On May 19, 2023, defendant Deputy Pelletier removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.[1] ECF No.

---

[1] It is unclear whether all the defendants consented to Deputy Pelletier's removal of the action from state court. ECF No. 1. Deputy Pelletier merely indicated that "[n]o other Defendants have appeared or answered," which is unsurprising because she removed the action only four days after it was initially filed. Id. at 2. "The Supreme Court has construed [§ 1446(b)] to include a 'unanimity requirement,' such that all defendants must consent to removal." Mayo v. Bd. of Educ. of Prince George's Cnty., 713 F.3d 735, 741 (4th Cir. 2013) (citing Lapides v. Bd. of Regents, 535 U.S. 613, 620 (2002)). Under the requirement of unanimous consent for removal, if any defendant properly joined and served in a state-court action does not consent to removal, the action cannot be removed, and remand is required. See 28 U.S.C. § 1446(b). The Fourth Circuit has specified that in a multiple-defendant case, removal can "be accomplished by the filling of one paper signed by at least one attorney, representing that all defendants have consented to the removal." Mayo, 713 F.3d at 742. As such, removal was defective because the notice of removal did not indicate the unanimous consent of Deputy Sacks, CCSO, and the County, and because they did not later file consents to the docket. Non-compliance with the rule of unanimity is a waivable "error in the removal process," rather than a defect in subject matter jurisdiction. Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006). As a result, a plaintiff who fails to make a timely objection waives the objection. See 28 U.S.C. § 1447(c) (explaining that, after removal, any "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days."). Plaintiffs did not move to remand and therefore waived their right to raise defective removal for failure to obtain unanimous consent as a basis for remand.

1. On October 4, 2023, plaintiffs filed an amended complaint, now the operative complaint. ECF No. 29, Amend. Compl. Plaintiffs filed on behalf of the estates of the decedents with Williams representing his daughters Shanice and Miranda and with Simmons representing her daughter Stephanie. Id. They bring ten causes of action.[2] Id. ¶¶ 126–247. On September 15, 2023, CCSO filed a motion to dismiss plaintiffs' 42 U.S.C. § 1983 claims as asserted against CCSO for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[3] ECF No. 24. On October 20, 2023, plaintiffs responded in

---

[2] Plaintiffs allege: (1) negligence / negligence per se by all defendants, Amend. Compl. ¶¶ 126–31; (2) negligent training by CCSO of Deputies Pelletier and Sacks, id. ¶¶ 132–35; (3) negligent supervision by CCSO and the County of Deputies Pelletier and Sacks, id. ¶¶ 136–44; (4) violation of the decedents' civil rights pursuant to 42 U.S.C. § 1983 by Deputies Pelletier and Sacks, id. ¶¶ 145–49; (5) municipal liability for an unconstitutional official policy pursuant to 42 U.S.C. § 1983 by CCSO and the County, id. ¶¶ 227–30; (6) municipal liability for an unconstitutional unofficial policy or custom pursuant to 42 U.S.C. § 1983 by CCSO and the County; id. ¶¶ 231–34; (7) municipal liability for inadequate training and supervision pursuant to 42 U.S.C. § 1983 by CCSO and the County, id. ¶¶ 235–40; (8) survival action and damages pursuant to S.C. Code Ann. § 15-5-90, id. ¶¶ 241–42; (9) wrongful death action and damages pursuant to S.C. Code Ann. § 15-51-10, id. ¶¶ 243–45; and (10) entitlement to reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, id. ¶¶ 246–47.

[3] The Fourth Circuit has been "unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." Andrews v. Daw, 201 F.3d 521, 524 n.2 (4th Cir. 2000) (comparing Biggs v. Meadows, 66 F.3d 56, 58–59 (4th Cir. 1995), with Abril v. Virginia, 145 F.3d 182, 184 (4th Cir. 1998), and Republic of Paraguay v. Allen, 134 F.3d 622, 626 (4th Cir. 1998)). The recent trend, however, appears to treat Eleventh Amendment Immunity motions under Rule 12(b)(1). See, e.g., Beckham v. Nat'l R.R. Passenger Corp., 569 F. Supp. 2d 542, 547 (D. Md. 2008) ("[A]lthough the Eleventh Amendment immunity is not a 'true limit' on this Court's subject matter jurisdiction, the Court concludes that it is more appropriate to consider their argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power." (internal citations omitted)). This distinction, however, "makes little practical difference" as in either case the court must assume the truth of the facts alleged in the complaint and view them in the light most favorable to the plaintiff. Zemedagegehu v. Arthur, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); accord Fleming v. Va. State Univ., 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016), aff'd as modified, 671 F. App'x 117 (4th Cir 2016).

opposition to the motion, ECF No. 34, to which CCSO replied on November 10, 2023, ECF No. 43. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Lab'ys, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

CCSO seeks to have the court dismiss plaintiffs' 42 U.S.C. § 1983 Monell[4] liability causes of action as asserted against CCSO for unconstitutional official policies, customs, and inadequate training and supervision for failure to state a claim. ECF No. 24 at 1 (referencing Compl. ¶¶ 155–64).[5] CCSO argues that "[i]t is well settled that the [CCSO] is immune from these claims as a § 1983 claim for municipal liability under the Monell Doctrine cannot be brought against a Sheriff's Office because it is a state agency and not a person as defined by § 1983." Id. at 2. In South Carolina, a Sheriff's office is an agency of the State. Id. at 4 (citing Stewart v. Beaufort Cnty., 481 F. Supp. 2d 483, 492 (D.S.C. 2007)). Thus, CCSO, as a state agency, is entitled to immunity under the Eleventh Amendment. Id. (citations omitted). As such, CCSO argues that plaintiffs fail to state a claim upon which relief may be granted as to the municipal liability claims asserted against CCSO. Id. at 5.

In response, plaintiffs first contend that the court must decide whether CCSO is a policymaker for the County. ECF No. 34 at 2. Second, plaintiffs argue that the precedent establishing that a sheriff's office is an agent of the state does not govern the instant facts. See id. at 2–4 (first citing Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd, 878 F.2d 379 (4th Cir. 1989); and then citing Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996)). Third, plaintiffs claim that the critical question deciding whether CCSO is entitled to Eleventh Amendment immunity is whether the state of South Carolina is liable

---

[4] Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 701 (1978).
[5] The motion to dismiss, ECF No. 24, was filed prior to the amended complaint, ECF No. 29. As such, the motion's references to the three Monell liability causes of action in the complaint likely remain in force with regards to those same claims in the amended complaint. Amend. Compl. ¶¶ 227–40.

for any judgment on plaintiffs' Monell claims. Id. at 2 (citing Ram Ditta ex rel. Ram Ditta v. Md. Nat'l Cap. Park & Planning Comm'n, 822 F.2d 456, 457 (4th Cir. 1987)). Plaintiffs thereafter perform the analysis described in Ram Ditta, 822 F.2d at 457–58,[6] and conclude that the entity that would pay the judgment is Charleston County, not the state of South Carolina, and, thus, CCSO should be treated as a municipal entity rather than as a state agent.[7] Id. at 2–5, 10–33. Consequently, plaintiffs request that the court deny CCSO's claim of Eleventh Amendment immunity. Id. at 33–34.

---

[6] The Fourth Circuit enumerated a four-factor test to determine whether an entity, other than the state itself, is eligible for Eleventh Amendment immunity:

> While many factors must be considered in determining whether an entity is the alter ego of the state, it is generally held that the most important consideration is [1] whether the state treasury will be responsible for paying any judgment that might be awarded. . . . Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, [2] whether the entity exercises a significant degree of autonomy from the state, [3] whether it is involved with local versus statewide concerns, and [4] how it is treated as a matter of state law.

Ram Ditta, 822 F.2d at 457–58; see also S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008). The original Ram Ditta analysis has been adapted consistent with the Supreme Court's decision in Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994). The Court considered how to resolve the primary question where the four factors do not lead to a single conclusion and declared that two considerations remain paramount: (1) to prevent federal court judgments from depleting a state's treasury and (2) to preserve the dignity of the states. Id. at 39, 47. "Under this sovereign dignity inquiry, a court must, in the end, determine whether the governmental entity is so connected to the State that the legal action against the entity would, despite the fact that the judgment will not be paid from the State treasury, amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 224 (4th Cir. 2001) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996)).

[7] Plaintiffs argue that three of the four Ram Ditta factors support finding CCSO to be a municipal agent, with the fourth factor unclear as to whether CCSO is an agent of the municipality or the state. ECF No. 34 at 7–11. Plaintiffs first contend that only the Charleston County Treasury is at risk for any Monell claim brought against CCSO, not the state treasury. Id. at 2, 7–8. Second, plaintiffs emphasize that the CCSO "operates with autonomy from the State of South Carolina as to virtually every aspect of its operations, funding, supervision, and employees." Id. at 8–9. Third, the CCSO and

6

In reply, CCSO contends that precedent from the federal appellate courts and the district courts in South Carolina have repeatedly answered this question and found that sheriffs' offices are state agents and thereby are entitled to Eleventh Amendment immunity. ECF No. 43 at 1. CCSO cites to ten cases in which courts have found that CCSO was entitled to Eleventh Amendment immunity, id. at 4–5, and attaches an appendix listing cases which concluded that sheriffs' offices across South Carolina were entitled to Eleventh Amendment immunity, id. at 4 n.2, 14–15. Moreover, CCSO cites to several Fourth Circuit opinions which have confirmed that understanding and performed the Ram Ditta analysis—even finding the sheriff's office to be an arm of the state where it was unclear whether the state would pay out should the defendant be held liable. Id. at 5–7. Thus, CCSO emphasizes that Fourth Circuit precedent forecloses the court from adopting plaintiffs' interpretation and the plaintiffs' allegations and arguments cannot avoid the controlling precedent in the Fourth Circuit. Id. at 7–12. Furthermore, CCSO highlights that federal district courts have repeatedly ruled that a sheriff's office is a state office entitled to Eleventh Amendment immunity in South Carolina. Id. at 12. Those courts concluded as much separate and apart from whether any individual officer or sheriff when sued in his or her official capacity was entitled to immunity. Id. Consequently, CCSO requests the court grant its motion to dismiss. Id. at 13.

Initially, the court emphasizes the importance of precedent and further follows the Fourth Circuit's lead in noting that a court should not lightly presume that the law of the Fourth Circuit has been overturned, especially where the newly issued opinion can be

---

plaintiffs' claims are primarily involved in county, not state, concerns. Id. at 9–10. Fourth, plaintiffs emphasize that "[t]his Court is not bound by deficient State law determinations." Id. at 11.

read harmoniously with the existing precedent. See Taylor v. Grubbs, 930 F.3d 611, 619 (4th Cir. 2019). To be sure, the Fourth Circuit consistently reiterates that unpublished opinions are not binding precedent upon federal district courts. See, e.g., Turner v. Kight, 121 F. App'x 9 (4th Cir. 2005). However, federal district courts may not stray from binding precedent and this court will not do so in the instant case.[8] Consequently, the court first determines whether binding precedent clearly establishes that CCSO is not a person nor a municipality, but an agent of South Carolina entitled to Eleventh Amendment immunity.

A cause of action under Section 1983 requires the deprivation of a civil right by a "person" acting under color of state law. 42 U.S.C. § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). "The Eleventh Amendment bars such suits unless the State has waived its immunity, . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Id. In passing Section 1983, Congress clearly had no intention to disturb the States' Eleventh Amendment immunity or to so alter the federal-state balance. Id.; see also Quern v. Jordan, 440 U.S. 332 (1979). Entities which may benefit from Eleventh Amendment immunities are those states or government entities that are considered "arms of the State." S.C. Troopers Fed'n Loc. 13 v. South Carolina, 112 F. App'x 883, 885 (4th Cir. 2004) (citing Will, 491 U.S. at 70). In contrast,

---

[8] As this court has noted before, "[w]hen presented with binding Fourth Circuit precedent, district courts, like obedient children, should be seen and not heard." See Sadighi v. Daghighfekr, 36 F. Supp. 2d 279, 288 n.9 (D.S.C. 1999).

"municipal bodies sued under § 1983 cannot be entitled to absolute immunity," meaning municipalities are not entitled to Eleventh Amendment immunity. Monell, 436 U.S. at 701. Rather, municipalities may be held liable for constitutional violations committed by their employees or agents when an official custom, policy, or practice of the municipality, or the decision of a final policymaker for the municipality, is responsible for causing the deprivation. Id. at 694. Thus, the court is confronted with the question of whether CCSO is an agent of the state or the municipality.

Courts in this district have consistently held that a county sheriff's office is considered a state agency, not a municipal department, which is an interpretation that the Fourth Circuit has affirmed and has independently determined.[9] See, e.g., Cromer, 88 F.3d at 1332; Gulledge, 691 F. Supp. at 954–55 (discussing sheriff as agent and alter ego of the state and that deputy sheriffs act as the sheriff's agent); Patel v. McIntyre, 667 F. Supp. 1131, 1145 n.26 (D.S.C. 1987) (concluding that the sheriff and county are distinct and separate entities in South Carolina and that the sheriff does not act as a "county" policymaker in law enforcement matters), aff'd, 848 F.2d 185 (4th Cir. 1988) (unpublished table decision). South Carolina courts, including the South Carolina Supreme Court, have also consistently held that the sheriff and the sheriff's deputies are state, not county, employees. See, e.g., Edwards v. Lexington Cnty. Sheriff's Dep't, 688

---

[9] In fact, this court has previously found as much on multiple occasions, explicitly stating "the Sheriff's Department, like the sheriff, is an arm of the state and entitled to Eleventh Amendment immunity." McCall v. Williams, 52 F. Supp. 2d 611, 623 (D.S.C. 1999); see also Mozingo v. Strickland, 2015 WL 5155259, at *2 (D.S.C. Sept. 1, 2015) ("Sheriffs' departments in South Carolina are considered state agencies."); Magwood v. City of Charleston Police Dep't, 2013 WL 5332640, at *3 (D.S.C. Sept. 23, 2013) (adopting report and recommendation) ("[A]s asserted against the Charleston County law enforcement division, this cause of action is a suit against the State of South Carolina itself.").

9

S.E.2d 125, 127 n.1 (S.C. 2010); Lampley v. Hulon, 854 S.E.2d 489, 491 (S.C. Ct. App. 2021), reh'g denied (Feb. 23, 2021), cert. denied (Apr. 6, 2022). In sum, "[i]t is well settled, both in South Carolina law and federal law, that a Sheriff in South Carolina is an arm of the State and not a County employee and therefore is entitled to Eleventh Amendment Immunity in his or her official capacity from suit in Federal Court." Cash v. Thomas, 2013 WL 3804375, at *7 (D.S.C. July 19, 2013). These decisions have not been overturned or expressly abrogated, and therefore remain good law on the question of whether a South Carolina sheriff's office is an agent of the state versus a municipality.[10]

---

[10] The decisions holding that a South Carolina sheriff's office is an arm of the state are unanimous and numerous. See, e.g., Wall v. Sloan, 135 F.3d 771 (4th Cir. 1998) (agreeing that a South Carolina county sheriff is a state official and thereby not subject to suit for monetary damages in his official capacity); Brown v. Middleton, 362 F. App'x 340, 346 n.8 (4th Cir. 2010) (noting that the district court correctly concluded that the Charleston County Sheriff could not be held liable under § 1983 in his official capacity since he is a state official); Smith v. Cherokee Cnty. Sheriff's Off., 2023 WL 6466468, at *2 (D.S.C. Sept. 11, 2023) ("Cherokee County Sheriff's Office is considered a state agency under South Carolina law and is therefore entitled to sovereign immunity."), report and recommendation adopted, 2023 WL 6462871 (D.S.C. Oct. 4, 2023); Brooks v. Berkeley Cnty. Sheriff's Off., 2022 WL 18635126, at *3 (D.S.C. Sept. 1, 2022) ("BCSO and OCSO are considered state agencies, and as such, they are entitled to sovereign immunity."), report and recommendation adopted, 2023 WL 142394 (D.S.C. Jan. 10, 2023); Hoover v. Horry Cnty. Sheriff's Off., 2022 WL 17543063, at *2 (D.S.C. Nov. 3, 2022) ("Horry County Sheriff's Office is considered a state agency, as such it is entitled to sovereign immunity."), report and recommendation adopted, 2022 WL 17542997 (D.S.C. Dec. 8, 2022); Murray v. Greenville Cnty. Sheriff's Off., 2018 WL 5624162, at *2 (D.S.C. Sept. 19, 2018) ("[County] sheriff's departments in South Carolina are considered alter egos or arms of the state."), report and recommendation adopted sub nom., 2018 WL 5617931 (D.S.C. Oct. 29, 2018); Wirtz v. Oconee Cnty. Sheriff's Dep't, 2013 WL 5372795, at *1 (D.S.C. Sept. 24, 2013) ("Under South Carolina law, a sheriff's department is a state agency, not a department under the control of the county."); Watts v. Lexington Cnty. Police Dep't, 2012 WL 6025771, at *4 (D.S.C. Nov. 15, 2012) ("[S]uing LCSD is the same as suing the State."), report and recommendation adopted, 2012 WL 6024672 (D.S.C. Dec. 4, 2012). Plaintiffs do not identify any court case that holds otherwise—instead choosing to critique the logic of all relevant cases for failing to adequately review the factors in Ram Ditta, 822 F.2d at 457–58. See generally ECF No. 34.

Consequently, plaintiffs face a Sisyphean battle to demonstrate that the large body of cases that have found sheriffs and sheriff's offices to be arms of the state of South Carolina do not apply to the instant facts.[11]

Plaintiffs first argue that the CCSO is the sheriff's office, not an individual sheriff, and "no Court has . . . analyzed the South Carolina Sheriff's Office as an entity and has instead looked only at the Sheriff as an individual official." ECF No. 34 at 3. Consequently, plaintiffs conclude that precedent does not foreclose them from suing the sheriff's office as an entity. Id. at 11–33. This is a perplexing argument given the clear and ubiquitous precedent holding the opposite. See, e.g., Millmine v. Cnty. of Lexington, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) ("In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county."), aff'd, 557 F. App'x 227 (4th Cir. 2014); Carroll v. Greenville Cnty. Sheriff's Dep't, 871 F. Supp. 844, 846 (D.S.C. 1994) ("It is well-established in this state that a sheriff's office is an agency of, and a sheriff 'dominated by' the state, such that a suit against the sheriff in his official capacity is a suit against the State."); Abebe v. Moring, 2013 WL 12098810, at *1 (D.S.C. Sept. 25, 2013) ("[I]n South Carolina, a sheriff's department is

---

[11] Despite this precedent, plaintiffs believe they have met their burden to establish stare decisis does not apply by showing that:

> All prior court decisions cite to the deeply flawed analyses of Gulledge and Cromer, and no subsequent case (1) ever fully considered that the State is not liable for the judgment against a Sheriff's Office; (2) conducted a complete analysis of the three (3) Ram Ditta[, 822 F.2d at 457–58,] and Harter[ v. Vernon, 101 F.3d 334 (4th Cir. 1996)], factors as to the Sheriff's Office as an entity; or (3) analyzed the Sheriff as policymaker as to the Monell claims alleged per McMillian[ v. Monroe Cnty., 520 U.S. 781, 785 (1997)].

ECF No. 34 at 11.

an agency of the state."), aff'd, 557 F. App'x 227 (4th Cir. 2014).  The argument also falls apart because the rationale behind an individual state official's immunity is that it "is not a suit against the official but rather is a suit against the official's office," which here would be the sheriff's office.  Stewart, 481 F. Supp. 2d at 489.  Consequently, the suit against the sheriff's office "is no different from a suit against the State itself and is therefore barred under the Eleventh Amendment."  Id.

Presumably considering the foregoing, plaintiffs contend that to the extent other courts have found the sheriff's office to be entitled to immunity, those courts have reached that conclusion by inappropriately extending the immunity established for the individual sheriff to the sheriff's office without engaging in a meaningful analysis of the relevant factors.  ECF No. 34 at 11–33.  Specifically, plaintiffs contend that none of those courts "had any proof that the State Treasury was at risk for any Monell claim brought against any Sheriff's Office" nor did they "conduct[] the complete analysis of the three remaining Ram Ditta factors."  Id. at 4–5.  Plaintiffs also draw an analogy to a Fourth Circuit opinion considering whether North Carolina Sheriffs are county actors versus state actors where the court conducted a Ram Ditta analysis that emphasized the degree of autonomy of the sheriff and the sheriff's office from the state of North Carolina.  ECF No. 34 at 17–18 (citing Harter v. Vernon, 101 F.3d 334, 340–41 (4th Cir. 1996)).  Plaintiffs argue that the Fourth Circuit's holding in Harter should also apply to South Carolina—namely, the relevant South Carolina statutes are analogous to North Carolina statutes that the Fourth Circuit considered and found to establish that sheriffs were under the control of a mixture of both the state and the county.  Id. at 17–24; Harter, 101 F.3d at 340–41.

Such an interpretation misses the mark because there are meaningful differences in the relevant North Carolina and South Carolina statutes, and the Fourth Circuit considered those differences to explain its conclusion in Harter. See 101 F.3d at 341 n.2 (identifying the meaningful differences in North Carolina and South Carolina to explain the different conclusions in Harter versus Cromer). Fortunately, this court need not speculate about how the Fourth Circuit would apply the Ram Ditta factors to a lawsuit against a South Carolina sheriff or sheriff's office because it considered the Ram Ditta factors in reaching its conclusions in factually analogous, if not identical, cases. For example, in Gulledge, the District Court determined that county sheriff's offices are "dominated" by the state for the following reasons:

> While the state constitution establishes the elective office of county sheriff and his term of office, it also provides that the General Assembly is to prescribe his duties and compensation. S.C. Const. art. V § 24. Accordingly, the General Assembly through numerous statutes has set forth the sheriff's (and his deputies') duties and compensation. See South Carolina Code of Laws, 1976, §§ 23-11-10 et seq.; § 23-13-10; § 4-9-30(5) and (7). The sheriffs' arrest powers relate primarily to state offenses. Id. §§ 17-13-30, 23-15-50. Indeed, even the sheriff's territorial jurisdiction, namely, county-wide, is in effect prescribed by the legislature through the statutory designation of county boundary lines. Id. §§ 4-3-10 et seq. Although the sheriff as an elected official is not subject to hiring and firing by the state, the legislature has nevertheless prescribed that the Governor is the public official empowered to remove the sheriff from office for misconduct and to fill a vacancy in that office. Id. § 1-3-240; § 23-11–40.[12]

---

[12] Section 23-11-40 provides that a vacancy in the office of sheriff is filled by gubernatorial appointment until either the next general election for county sheriffs or a special election to elect someone to hold the office until the next general election for county sheriffs depending on when the vacancy occurs. Section 1-3-220(2) provides that the Governor appoints an officer to fill any vacancy in a "county office" until the next general election. The South Carolina Supreme Court has interpreted these two provisions in pari materia to mean that the Governor fills a vacancy in the sheriff's office until the next general election for county sheriffs. Privette v. Grinnell, 4 S.E.2d 305 (S.C. 1939). Although by this interpretation the State Supreme Court has concluded that the sheriff's office is a county office for the purpose of

> As in McConnell[ v. Adams, 829 F.2d 1319 (4th Cir. 1987)], "the inescapable conclusion is that [a county sheriff] [is] dominated by the state." 829 F.2d at 1328."

691 F. Supp. at 954–55 (footnote number altered). In Cromer, the Fourth Circuit stated that it "considered the remaining factors relevant to the immunity analysis and conclude[d] that, in his official capacity, Sheriff Brown [wa]s an arm of the state." Cromer, 88 F.3d at 1332. In so doing, the court cited to Gulledge, indicating its intention to incorporate Gulledge's analysis by reference. See id. Since the Fourth Circuit has fully considered the Ram Ditta factors in evaluating Section 1983 liability for South Carolina sheriffs, this court is foreclosed by controlling precedent from finding South Carolina county sheriffs or sheriff's offices to be municipal actors.

Plaintiffs have presented no reason that would convince the court to sidestep the controlling precedent establishing that South Carolina sheriff's offices are arms of the state. Plaintiffs' disagreement with the logic underlying those decisions and statutes does not fundamentally change that this court must follow binding precedent. See ECF No. 34 at 28–31. Thus, the court finds CCSO is entitled to Eleventh Amendment immunity and grants CCSO's motion to dismiss plaintiffs' 42 U.S.C. § 1983 claims as asserted against CCSO.

---

> filling a vacancy, that conclusion d[id] not prevent [the court in Gulledge, 691 F. Supp. at 954 n.6,] from determining that the sheriff acts as an agent of the state, not the county, in light of the state's potential power of control over him. See McConnell, 829 F.2d at 1326 n.5; see also Patel v. McIntyre, 667 F. Supp. 1131, 1145 n.26 (D.S.C. 1987), aff'd, 848 F.2d 185 (4th Cir. 1988).

Gulledge, 691 F. Supp. at 954 n.6. This court similarly finds that the sheriff acts as an agent of the state, not the county.

14

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss.

**AND IT IS SO ORDERED.**

                      **DAVID C. NORTON**
                      **UNITED STATES DISTRICT JUDGE**

**December 13, 2023**
**Charleston, South Carolina**