IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| RANDALL WILLIAMS, *Personal Representative of the Estates of Shanice R. Dantzler-Williams and Miranda R. Dantzler-Williams*; and BETTY SIMMONS, *Personal Representative of the Estate of Stephanie Dantzler*;<br><br>Plaintiffs,<br><br>vs.<br><br>EMILY PELLETIER; CLINTON SACKS; CHARLESTON COUNTY SHERIFF'S OFFICE; and CHARLESTON COUNTY,<br><br>Defendants. | No. 2:23-cv-02149-DCN<br><br>**ORDER** |

The following matter is before the court on plaintiffs Randall Williams ("Williams") and Betty Simmons ("Simmons") (together, "plaintiffs") motion for entry of judgment under Fed. R. Civ. P. 54(b) so that they can proceed in appealing the court's earlier dismissal of plaintiffs' 42 U.S.C. § 1983 claims against defendant Charleston County Sheriff's Office ("CCSO"), ECF No. 47. ECF No. 48. For the reasons set forth below, the court grants the motion and certifies the order as a final judgment. The court stays proceedings in this case pending resolution of the appeal.

## I.  BACKGROUND

This case arises from a car accident which resulted in the deaths of Shanice R. Dantzler-Williams ("Shanice"), Miranda R. Dantzler-Williams ("Miranda"), and Stephanie Dantzler ("Stephanie") (together, the "decedents"). ECF No. 29, Amend. Compl. ¶¶ 79–86. Deputy Emily Pelletier ("Deputy Pelletier") and Deputy Clinton Sacks

1

("Deputy Sacks") (together, "Deputies") of the CCSO were responding to a non-emergency stalled vehicle and, in so doing, greatly exceeded the speed limits, failed to abide by traffic laws, and failed to engage their respective emergency lights or audible sirens in violation of CCSO policy.  Id. ¶¶ 38–86.  Deputy Pelletier sped past a stop sign and crossed multiple lanes of traffic on Highway 17, ultimately striking a vehicle driven southbound by Shanice at a speed of 73 miles-per-hour.  Id. ¶ 79.  Shanice and Miranda were celebrating Mother's Day with their mother Stephanie.  Id. ¶ 80.  Shanice and passengers Stephanie and Miranda all sustained catastrophic injuries because of the crash and died shortly thereafter.  Id. ¶¶ 80–86.  It is alleged that this incident was not a one-off but rather that CCSO deputies have a history of dangerous driving and misuse of county vehicles, which neither CCSO nor Charleston County (the "County") have adequately addressed.  Id. ¶¶ 93–98.

Plaintiffs filed this action in the Charleston County Court of Common Pleas on May 15, 2023.  Williams v. Pelletier, No. 2023-CP-1002308 (Charleston Cnty. Ct. C.P. May 15, 2023), ECF No. 1-1, Compl.  On May 19, 2023, Deputy Pelletier removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.  ECF No. 1.  On October 4, 2023, plaintiffs filed an amended complaint, now the operative complaint, on behalf of the estates of the decedents, with Williams representing his daughters Shanice and Miranda and with Simmons representing her daughter Stephanie.  Amend. Compl. Plaintiffs bring ten causes of action.[1]  Id. ¶¶ 126–247.

---

[1] Plaintiffs allege: (1) negligence/negligence per se by all defendants, Compl. ¶¶ 126–31; (2) negligent training by CCSO of Deputies Pelletier and Sacks, id. ¶¶ 132–35; (3) negligent supervision by CCSO and the County of Deputies Pelletier and Sacks, id. ¶¶ 136–44; (4) violation of the decedents' civil rights pursuant to 42 U.S.C. § 1983 by Deputies Pelletier and Sacks, id. ¶¶ 145–49; (5) municipal liability for an unconstitutional

On December 13, 2023, this court issued an order granting defendant CCSO's motion to dismiss for failure to state a claim and dismissed plaintiffs' 42 U.S.C. § 1983 claims as asserted against CCSO upon finding CCSO entitled to Eleventh Amendment immunity. ECF No. 47 (the "December Order"). On December 22, 2023, plaintiffs filed a motion for Rule 54(b) certification of the December Order and to stay further proceedings. ECF No. 48. On January 5, 2024, Deputy Sacks and CCSO filed a response in opposition, ECF No. 49, to which plaintiffs replied on February 16, 2024, ECF No. 51. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Rule 54(b) provides, "[w]hen an action presents more than one claim for relief . . . or . . . when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit. Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993). The Rule also allows the district court to provide relief to litigants that would suffer undue hardship if final judgment were not entered on the adjudicated claim prior to the resolution of the unadjudicated claims. Id.

---

official policy pursuant to 42 U.S.C. § 1983 by CCSO and the County, id. ¶¶ 227–30; (6) municipal liability for an unconstitutional unofficial policy or custom pursuant to 42 U.S.C. § 1983 by CCSO and the County; id. ¶¶ 231–34; (7) municipal liability for inadequate training and supervision pursuant to 42 U.S.C. § 1983 by CCSO and the County, id. ¶¶ 235–40; (8) survival action and damages pursuant to S.C. Code Ann. § 15-5-90, id. ¶¶ 241–42; (9) wrongful death action and damages pursuant to S.C. Code Ann. § 15-51-10, id. ¶¶ 243–45; and (10) entitlement to reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, id. ¶¶ 246–47.

3

Rule 54(b) certification is recognized as the exception rather than the norm. Braswell Shipyards, 2 F.3d at 1335. "It should neither be granted routinely, . . ., nor as an accommodation to counsel." Id. (internal citations omitted).

The court's determination of whether to enter final judgment involves two steps. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7–8 (1980). First, the court must determine whether the judgment is final with respect to the relevant claims or parties. Id. at 7. Second, the court must determine whether there is any "just reason for delay" in entering a judgment. Id. at 8. In this step, the court considers "judicial administrative interests as well as the equities involved." Id. The burden to persuade the court that entry of final judgment is appropriate rests with the moving party. Id. at 1335. Where the district court is persuaded that Rule 54(b) certification is appropriate, it must state those findings on the record or in its order. Id. at 1336.

### III.   DISCUSSION

Plaintiffs move for an order certifying the December Order and to stay further proceedings pending that appeal. ECF No. 48 at 1. Plaintiffs indicate that they consulted with the defendants regarding this motion, with the following results: CCSO opposes Rule 54(b) certification, the County and Deputy Sacks do not consent, but Deputy Pelletier does not oppose. Id.

The court finds that its previous conclusions reached in its December Order bear repeating because plaintiffs now seek to stay litigation to appeal that decision to the Fourth Circuit. See ECF Nos. 48; 47. The December Order resolved a motion to dismiss plaintiffs' 42 U.S.C. § 1983 Monell[2] liability causes of action as asserted against CCSO.

---

[2] Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 701 (1978).

ECF No. 47 at 14. In short, this court found that South Carolina sheriff's offices are arms of the state and thereby are entitled to Eleventh Amendment immunity. Id. at 9–14 ("[P]laintiffs face a Sisyphean battle to demonstrate that the large body of cases that have found sheriffs and sheriff's offices to be arms of the state of South Carolina do not apply to the instant facts.").

In reaching this conclusion, the court evaluated, and ultimately rejected, plaintiffs' arguments that a Fourth Circuit decision analyzing North Carolina law and determining that North Carolina sheriffs are county actors, not state actors, should be read to overrule or abrogate a Fourth Circuit case finding South Carolina sheriffs to be state actors. Id. at 12–13 (first citing Harter v. Vernon, 101 F.3d 334, 340–41 (4th Cir. 1996) (finding North Carolina sheriffs to be county actors); then citing Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996) (finding South Carolina sheriffs to be state actors); and then citing Gulledge v. Smart, 691 F. Supp. 947 (D.S.C. 1988), aff'd, 878 F.2d 379 (4th Cir. 1989) (same)). To reiterate, this court found that Harter did not abrogate or overrule Cromer because the Fourth Circuit expressly considered the differences in North Carolina and South Carolina statutes when it reached differing conclusions in Harter versus Cromer. Id. at 13 (citing Harter, 101 F.3d at 341 n.2). Consequently, binding Fourth Circuit law required the court to find that CCSO was a state actor entitled to Eleventh Amendment immunity. Id. Having set forth the relevant procedural and substantive history, the court turns to the two-step standard of review for deciding whether to direct entry of final judgment.

### A. Final Judgment

"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Kinsale Ins. Co. v. JDBC Holdings, Inc., 31 F.4th 870, 873 (4th Cir. 2022) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). "Accordingly, a final judgment is certifiable under Rule 54(b) and appealable under § 1291 if the judgment is 'final in the sense that it is an ultimate disposition of an individual claim entered in the court of a multiple claims action.'" Id. (quoting MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 855 (4th Cir. 2010)).

Plaintiffs assert that the December Order is an ultimate disposition and final judgment of all Monell liability claims asserted against CCSO as defined in Rule 54(b). ECF No. 48 at 3 (citing Fed. R. Civ. P. 54(b)). Defendants do not challenge that the December Order was an ultimate disposition and final judgment on those claims under this first step. See ECF No. 49. The court likewise finds that the December Order qualifies as a final judgment on those claims and turns to the second step of the analysis.

### B. Just Reason for Delay

In this step, the court considers "judicial administrative interests as well as the equities involved." Curtiss-Wright Corp., 446 U.S. at 8. "In determining whether there is no just reason for the delay in the entry of judgment, the district court is instructed to conduct a 'case-specific' inquiry, keeping in mind that this inquiry is 'tilted from the start against [the] fragmentation of appeals.'" Kinsale Ins. Co., 31 F.4th at 874 (quoting Braswell Shipyards, 2 F.3d at 1335) (alteration in original quotation)). The Fourth Circuit has identified five factors which speak to the equities:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Braswell Shipyards, 2 F.3d at 1335–36 (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975)).

Plaintiffs contend that there is no just reason for the delay of the entry of judgment. ECF No. 48 at 3. They argue that the issue of Eleventh Amendment immunity's impact on the municipal liability causes of action "are purely questions of law and are in no way connected to the merits of the remaining unadjudicated claims." Id. at 4. Plaintiffs cite to Pratt-Miller v. Arthur, 701 F. App'x 191, 192 (4th Cir. 2017) (per curiam), and argue that it demonstrates that the first factor weighs in favor of certification.[3] Id. Accordingly, under the first factor, plaintiffs conclude that the relationship between the adjudicated and unadjudicated claims favors certifying the judgment. Id. Moreover, plaintiffs emphasize that the Supreme Court and the Fourth Circuit have both held that the denial of a motion to dismiss based on Eleventh Amendment immunity is immediately appealable, even where claims against other defendants remain pending in the district court, and plaintiffs urge the court to extend that

---

[3] In Pratt-Miller, the District Court for the Eastern District of Virginia granted Rule 54(b) certification on its summary judgment order dismissing Monell Claims against a deputy sheriff in her official capacity on Eleventh Amendment immunity grounds. 701 F. App'x at 192–93. In light of the resulting opinion, plaintiffs argue that the Fourth Circuit presumably concluded it had jurisdiction to consider the appeal despite the other pending claims which remained against that deputy in the district court. See id.

7

logic to scenarios where courts grant a motion to dismiss on those same grounds.[4]  Id. at

5–6 (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).

In reference to the second factor, plaintiffs note that appellate review of CCSO's entitlement to Eleventh Amendment immunity cannot be mooted by any further developments in the district court and no further factual questions or findings are germane to the appeal of that question.  Id. at 6 (citing Fox v. Balt. City Police Dep't, 201 F.3d 526, 531–32 (4th Cir. 2000)).  Similarly, and in reference to the third factor, plaintiffs emphasize that there is no chance that the reviewing court will consider CCSO's Eleventh Amendment immunity twice.  Id. at 6–7.  That is because CCSO is

---

[4] The denial of Eleventh Amendment sovereign immunity is immediately appealable through an interlocutory appeal under the collateral order doctrine.  P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 141 (1993).  In P.R. Aqueduct, the Supreme Court explained the rationale behind the rule was that upon the denial of immunity, "the central benefits of qualified immunity—avoiding the costs and general consequences of subjecting public officials to the risks of discovery and trial— would be forfeited," absent immediate appeal.  Id. at 144–45.  The Court clearly defined that where a district court denies a claim of Eleventh Amendment immunity, states and state entities that claim to be "arms of the State" may take advantage of the collateral order doctrine to appeal that order.  Id. at 147.
  Plaintiffs in this case ask the court to find the inverse to be equally true and that granting Eleventh Amendment immunity should qualify as a final judgment and merit an interlocutory appeal to the Fourth Circuit.  ECF No. 48 at 5–6.  Fourth Circuit precedent indicates that the collateral order doctrine does not confer appellate jurisdiction where a court grants immunity from suit, but where other claims remain pending in the district court, because that grant of immunity may be fully and effectively reviewed after final judgment.  Baird v. Palmer, 114 F.3d 39, 43 (4th Cir. 1997).  The Fourth Circuit expressly considered whether an order granting summary judgment based on qualified immunity should permit the immediate appeal under Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949), and found that a non-final order granting qualified immunity may not be immediately appealed as a collateral order.  Baird, 114 F.3d at 43.  To be clear, plaintiffs are not seeking to appeal the December Order under the collateral order doctrine.  See generally ECF No. 48.  Instead, they ask the court to certify the December Order as final pursuant to Fed. R. Civ. P. 54(b) so that it becomes immediately appealable.  Id.  That determination rests within the sound discretion of the district court.  See Braswell Shipyards, 2 F.3d at 1335–36.

purportedly the only named party that can assert that immunity and the court dismissed all the municipal liability claims asserted against CCSO in its December Order. Id. Plaintiffs contend that the fourth factor is irrelevant to this case. Id. In reference to the fifth factor, plaintiffs claim that if they are forced to wait until all the remaining claims in this case are litigated before an appeal is allowed, there is a strong possibility that plaintiffs, if successful on appeal, would be forced to relitigate the entire case. Id. at 7. Further, plaintiffs inversely note that "if the appeal is unsuccessful, the remaining issues for trial become narrowed and the trial ultimately shortened." Id. Given the importance of the claims against CCSO and the foregoing considerations, plaintiffs believe that failure to certify the December Order "would result in unreasonable cost and not serve judicial economy." Id. Moreover, plaintiffs indicated at the hearing the Deputy Pelletier is facing a criminal case in addition to this civil case.[5] ECF No. 52. They suggested that this civil case may be stayed pending disposition of the parallel criminal proceedings, such that a delay and certification of the immunity question would not prejudice the defendants. See id.

Finally, plaintiffs filed a one-page brief identifying a recently decided case from the Fourth Circuit in which the court considered a 42 U.S.C. § 1983 claim brought against a South Carolina sheriff's office. ECF No. 51 at 1 (citing English v. Clark, 90 F.4th 636, 649–50 (4th Cir. 2024)). Plaintiffs cite that case to assert that South Carolina

---

[5] The court has identified three criminal prosecutions for reckless homicide brought by the state of South Carolina against Deputy Pelletier, presumably based on the same fatal car crash that forms a basis for the instant civil action. See State v. Emily Nicole Pelletier, Case No. 2022A1011400016 (Charleston Cnty. Ct. Gen. Sess. indicted June 13, 2023); State v. Emily Nicole Pelletier, Case No. 2022A1011400017 (Charleston Cnty. Ct. Gen. Sess. indicted June 13, 2023); State v. Emily Nicole Pelletier, Case No. 2022A1011400018 (Charleston Cnty. Ct. Gen. Sess. indicted June 13, 2023).

sheriffs' entitlement to Eleventh Amendment immunity is not well-settled law and the Fourth Circuit has indicated, through English, that it is open to the parties' arguments as to South Carolina sheriffs' immunity. Id.; see also ECF No. 52. In relevant part, plaintiffs claimed that the Insurance Reserve Fund ("IRF") that the County used to purchase its County Automobile Policy and County Tort Policy insurance does not use any state funds, and consequently Charleston County functionally self-insures, much like Richland County—the defendant in English. ECF No. 52; see also Amend. Compl. ¶¶ 150–221. Plaintiffs set forth those allegations in their amended complaint and asserted that the attachments to the complaint, ECF Nos. 29-5 (IRF Audit); 29-6 (American Southern Insurance Company Policy), and their response brief to the motion to dismiss, ECF No. 34, sufficiently establish the record—consisting of certified public records capable of judicial notice[6]—such that the Fourth Circuit could meaningfully rule on the question of Eleventh Amendment immunity in relation to the factors identified by Ram Ditta ex rel. Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n, 822 F.2d 456, 457 (4th Cir. 1987).[7]

---

[6] While additional discovery may prove helpful to determine the question of state funding, plaintiffs indicated at the hearing that they are confident the current record is sufficient to rule on the question of Eleventh Amendment immunity. ECF No. 52.

[7] The Fourth Circuit enumerated a four-factor test to determine whether an entity, other than the state itself, is eligible for Eleventh Amendment immunity:

> While many factors must be considered in determining whether an entity is the alter ego of the state, it is generally held that the most important consideration is [1] whether the state treasury will be responsible for paying any judgment that might be awarded. . . . Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, [2] whether the entity exercises a significant degree of autonomy from the state, [3] whether it is involved with local versus statewide concerns, and [4] how it is treated as a matter of state law.

Deputy Sacks and CCSO disagree and claim that "the requested certification will not serve to settle novel legal questions, resolve conflicting decisions, or materially advance the progress of the case." ECF No. 49 at 4. In other words, they focus on the fifth factor which provides for miscellaneous considerations such as delay, economic and solvency considerations, shortening the time of trial, and frivolity of competing claims. See Braswell Shipyards, 2 F.3d at 1335–36. First, Deputy Sacks and CCSO contend that plaintiffs have not demonstrated that this court's December Order resolved an issue on "a novel question that requires immediate consideration and adjudication by the Fourth Circuit." ECF No. 49 at 3. Given the well-settled precedent, Deputy Sacks and CCSO emphasize that for plaintiffs to be successful on appeal, the Fourth Circuit would need to agree to hear the interlocutory appeal en banc "which would be unprecedented." Id. Second, Deputy Sacks explains that he "strongly opposes any stay of the district court proceedings" because he intends to seek his own dismissal from this action and "would be prejudiced by a lengthy delay that would result from an interlocutory appeal." Id. He foreshadows his argument for dismissal of the claims because "the theory of liability against [him], who was not involved in the collision, is without precedent and is

---

Ram Ditta, 822 F.2d at 457–58; see also S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008). The original Ram Ditta analysis has been adapted consistent with the Supreme Court's decision in Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994). The Court considered how to resolve the primary question where the four factors do not lead to a single conclusion and declared that two considerations remain paramount: (1) to prevent federal court judgments from depleting a state's treasury and (2) to preserve the dignity of the states. Id. at 39, 47. "Under this sovereign dignity inquiry, a court must, in the end, determine whether the governmental entity is so connected to the State that the legal action against the entity would, despite the fact that the judgment will not be paid from the State treasury, amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." Cash v. Granville Cnty. Bd. of Educ., 242 F.3d 219, 224 (4th Cir. 2001) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996)).

extremely weak, at best." Id. Finally, Deputy Sacks and CCSO claim that plaintiffs cannot show that they need the inclusion of CCSO as a defendant to be "made whole" at trial or by settlement, because numerous claims against numerous defendants remain even after the December Order. Id. at 3–4. In sum, they conclude that plaintiffs "have not shown that this case is an appropriate candidate for Rule 54(b) certification." Id. at 4. At the hearing, defendants argued that English, 90 F.4th at 649–50, is readily distinguishable from the instant case because Richland County self-insures the sheriff's office whereas Charleston County does not. ECF No. 52.

The court considers the parties' arguments with respect to the Rule 54(b) factors identified by the Fourth Circuit. It finds that the first two factors weigh in favor of finding no just reason for delay. See Braswell Shipyards, 2 F.3d at 1335–36. The first factor weighs in favor because the question of whether CCSO is a state actor entitled to Eleventh Amendment immunity is purely a question of law, which does not impact the unadjudicated claims. See Fox, 201 F.3d at 531–32 (observing that an interlocutory appeal of a pure question of law does not counsel against Rule 54(b) certification because nothing could emerge from further district court proceedings that could alter the analysis of the question or render it moot).

The second factor also weighs in favor of certification because appellate review of CCSO's entitlement to Eleventh Amendment immunity cannot be mooted by any further developments in the district court and no further factual questions or findings are germane to the appeal of that question. See Washington v. Balt. Police Dep't, 2023 WL 3504202, at *2 (D. Md. May 16, 2023) (finding that the district court had fully resolved

all questions as to the officer defendants' liability and therefore no future action in district court would moot appellate review).

The third and fourth factors favor neither party. The third factor—the possibility that the reviewing court might be obliged to consider the same issue a second time—is unclear because even if the court were to consider the same issue a second time, its decision would not change without a change to binding precedent from the Fourth Circuit. See, e.g., Cromer, 88 F.3d at 1332. Plaintiffs claim that no other parties in this case are state actors that could assert Eleventh Amendment immunity, meaning it is extremely unlikely that the court would be obliged to consider the same issue twice. ECF No. 48 at 6–7. CCSO and Deputy Sacks are silent as to this factor. See ECF No. 49. Initially, the court notes that since the Deputies are sued in both their official and individual capacities, there is a strong likelihood that they will assert Eleventh Amendment immunity for those claims brought against them in their official capacities. See Amend. Compl. ¶¶ 3–4 (suing Deputy Pelletier and Deputy Sacks in their official and individual capacities).

Under South Carolina law, a suit against an officer in his or her official capacity as a deputy sheriff is the same as a suit against the State. See McCall v. Williams, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) (citing Cromer, 88 F.3d at 1332). As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court unless the State expressly waived this immunity. See id. (first citing U.S. Const. XI; and then citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984)). At the hearing, the court confirmed that there are pending § 1983 claims against the Deputies in their official capacities. ECF No. 52. In response, counsel for the

Deputies indicated that the deputies will likely assert Eleventh Amendment immunity in response to those claims, though they have not done so yet.[8]  Id.  Thus, the third factor weighs in favor of neither party because, on the one hand, the court may confront the same question of Eleventh Amendment immunity as to the § 1983 claims against the Deputies in their official capacities, but, on the other hand, the conclusion would almost certainly parallel that of the December Order due to binding Fourth Circuit law.  See ECF No. 48; Cromer, 88 F.3d 1315 (finding South Carolina sheriffs to be state actors); Gulledge, 878 F.2d 379 (same); cf. Harter, 101 F.3d at 340–41.  The fourth factor is mostly irrelevant to this inquiry, as there is no claim or counterclaim that could result in a set-off against the court's December Order granting Eleventh Amendment immunity to CCSO for plaintiffs' 42 U.S.C. § 1983 Monell claims.

Finally, there is a dispute over who the fifth factor favors.  Upon review of the arguments, the court concludes that it favors finding no just reason for delay.  Plaintiffs argue that failure to certify will result in financial hardship and not serve judicial economy because having the Fourth Circuit hear the appeal will either narrow the issues

---

[8] The court observes that counsel initially indicated at the hearing that Deputies Pelletier and Williams are only being sued in their individual capacities.  ECF No. 52.  However, a review of the amended complaint indicates that the Deputies are being sued in their individual and official capacities.  Amend. Compl. ¶¶ 3–4 ("Defendant Emily Pelletier . . . was acting under color of law and within the course and scope of her employment with Charleston County and agency as a Deputy of the [CCSO].  She is also sued in her individual capacity for compensatory and punitive damages under federal law.").  To be sure, the causes of action do not specify whether they are brought against the Deputies in their individual or official capacities.  Id. ¶¶ 126–247.  However, when the complaint is read in full, the Deputies are sued in both capacities as is made clear by plaintiff's stipulation that each deputy is "also sued in his [or her] individual capacity."  See id. ¶¶ 3–4.  Upon that clarification at the hearing, counsel for the Deputies indicated they would seek Eleventh Amendment immunity for those claims brought against the Deputies in their official capacities.  ECF No. 52.

if they are unsuccessful or enable plaintiffs to avoid re-litigation of their entire case if they are successful. See id. at 7. In contrast, CCSO and Deputy Sacks emphasize the hardship that staying the case and delaying further proceedings will cause to Deputy Sacks and further highlight the futility of the appeal to the Fourth Circuit on well-settled law. ECF No. 49 at 3–4. Plaintiffs' reply seeks to undercut CCSO and Deputy Sacks's futility argument by citing to English. ECF No. 51 at 1 (citing English, 90 F.4th at 649–50). However, this new authority does not expressly overturn older, binding precedent. Therefore, the defendants' arguments as to the appeal's futility remain relevant to the inquiry.[9] However, at the hearing, plaintiffs emphasized that Deputy Pelletier is facing

---

[9] English concerned the arrest, coerced false confessions, and year-plus detainment of Kewon English and Earl Powell before their cases were nolle prossed and they were released. English, 90 F.4th at 640. English and Powell sued individual sheriffs in the Richland County Sheriff's Department as well as the Richland County Sheriff's Department itself under § 1983 for violation of their constitutional rights guaranteed by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. Id. At the outset, the district court granted summary judgment for a sheriff sued in his official capacity and for the Richland County's Sheriff's Department on all counts, "holding that they were arms of the state of South Carolina and thus immune from § 1983 damages suits." Id. at 644. English reached the Fourth Circuit on appeal from the district court's granting of summary judgment as to English's First, Fourth, and Fourteenth Amendment claims. Id. at 645. The Fourth Circuit affirmed the district court's grant of summary judgment and found that there was no constitutional violation of English's rights under the First, Fourth, or Fourteenth Amendments. Id. at 645–49.

Relevant to Williams and Simmons's motion, the panel decision noted that since there was no underlying constitutional violation, "[it] need not reach the question of whether those defendants [Richland County Sheriff Lott and the Richland County Sheriff's Department] are entitled to Eleventh Amendment immunity. [It left] that question for another day." Id. at 649–50. Plaintiffs interpret this sentence to mean that the Fourth Circuit considers the question of whether South Carolina sheriffs are entitled to Eleventh Amendment immunity to be unsettled law. ECF No. 51 at 1. Such an interpretation is a stretch considering the explicit precedent from the Fourth Circuit holding otherwise. See Cromer, 88 F.3d 1315; Gulledge, 878 F.2d 379; cf. Harter, 101 F.3d at 340–41. However, plaintiffs' argument is well taken when that sentence is considered alongside the language in Cromer, in which the Fourth Circuit noted it was "unable to discern from the record in this case whether the state pays any premiums on behalf of Greenville County." 88 F.3d at 1332. In essence, plaintiffs claimed at the

15

parallel criminal proceedings such that discovery in this civil case will likely be stayed pending their resolution, which undermines CCSO and Deputy Sacks's arguments as to hardship. ECF No. 52. Considering the foregoing, the court finds that the fifth factor weighs in favor of the plaintiffs. Resolution of the Eleventh Amendment appeal will narrow the questions for trial and serve judicial economy, and the alleged hardship that may arise from delay of the case from the Rule 54(b) certification is accorded less weight because of the likelihood of a stay pending the parallel criminal proceedings against Deputy Pelletier.

The court finds that the five factors weigh in favor finding no just reason for delay. Such a finding, taken together with the court's conclusion that its December Order constituted a final judgment, weighs in favor of granting plaintiffs' motion for partial final judgment under Rule 54(b) as to the question of CCSO's Eleventh Amendment immunity for § 1983 Monell claims that this court resolved in its December Order.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for entry of judgment pursuant to Fed. R. Civ. P. 54(b) and **STAYS** further proceedings pending resolution of the appeal.

---

hearing that the record in this case would allow the Fourth Circuit to revisit its analysis in Cromer, 88 F.3d at 1332, with the information required to fully evaluate the Ram Ditta factors relevant to the Eleventh Amendment analysis. See ECF No. 52; Ram Ditta, 822 F.2d at 457–58. Whether that proves true remains to be seen.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 12, 2024
Charleston, South Carolina**